MANCHESTER INSURANCE AND INDEMNITY COMPANY, Plaintiff-Appellant, *v.* UNIVERSAL UNDERWRITERS INSURANCE COMPANY, Defendants-Appellees.

(No. 70-80;

Fifth District—May 24, 1972.

*Modified on denial of rehearing June 27, 1972.*

William E. Larrabee, of Craig & Craig, of Mattoon, for appellant.

William B. Wham, of Wham & Wham, of Centralia, for appellees.

Mr. JUSTICE EBERSPACHER delivered the opinion of the court:

Plaintiff, Manchester Insurance and Indemnity Company (hereinafter called Manchester), an Ohio corporation sued defendants, Universal Underwriters Insurance Company (hereinafter called Universal), a Missouri corporation, Regency Motors, Incorporated (hereinafter called Regency), Freda Curtis, Administratrix of the estate of Clayton Curtis, deceased, and Marion and Gloria Sparks (hereinafter called Sparks) in an action for declaratory judgment claiming that, concerning an action instituted by Sparks for personal injuries arising out of an accident between an automobile owned by Regency and rented or borrowed and driven by Curtis, the suit should be defended and any judgment should be satisfied primarily by Universal (Regency's insurer) and only secondarily by Manchester (Curtis' insurer).

On January 28, 1968, Regency did, "for good and valuable consideration received from Clayton R. Curtis, deceased, rent to, and grant permission" to use, drive or operate an automobile owned by Regency while the Curtis owned automobile was being repaired. Later on that same day, Curtis, driving the car furnished him by Regency, was involved in an

accident with an automobile driven by Marion Sparks and in which his wife Gloria was a passenger. Curtis died as a result of that collision and the Sparks filed a complaint against Curtis' estate. These are the facts alleged in Manchester's pleading which stands uncontroverted. The suit was decided adversely to Manchester on the pleading, and Manchester appeals.

■■ Manchester contends that the lower court erred in dismissing its complaint without deciding on the merits. Supreme Court Rule 273 (ch. 110A, sec. 273, Ill. Rev. Stat. 1969) provides that an involuntary dismissal, other than for lack of jurisdiction, improper venue or failure to join parties, operates as an adjudication upon the merits. Here, there being no dispute as to the facts, the court determined the issues as posed by Manchester's complaint for declaratory judgment.

It is clear that if Curtis was, in fact, covered under the provisions of the insurance policy issued to Regency by Universal than Universal's coverage is primary and Manchester's secondary. This particular issue is not disputed by Universal, nor well could it be. The Manchester policy provides that "the insurance with respect to temporary substitute automobiles * * * shall be *excess* insurance over any other valid and collectible automobile medical payments insurance", while the Universal policy provides that "the insurance afforded by this policy is *primary* insurance except when stated to apply in excess of or contingent upon the absence of other insurance". There is, of course, no statement so limiting Universal's liability with regard to the provisions at issue here.

The significant question, then, is whether Curtis was covered by the policy issued by Universal to Regency. The Universal policy describes certain *events* which are covered, and certain *persons* whom Universal will protect against the consequences of these events. Universal admits that the accident, (the event) was within the scope of the "hazards" clause. Appellees urge that in analyzing the policy reference should be made to an article "How to Read a Liability Insurance Policy" by G. F. Hartwick, 13 Hast. L. J. 175. We have no quarrel with Professor Hartwick's approach, but would point out that the record does not disclose that Universal advised of the availability or made available, to its customer Regency, that article when they sold and collected the premiums for either the policy or subsequent endorsements. One subdivision of that clause provides that the policy covers any hazard that arises out of "the ownership, maintenance or use of any automobile owned by the named insured while furnished for the use of any person."

However, we hold that Curtis was not a "person insured" by the policy as originally written. The pertinent parts of the "Persons Insured" provision are reproduced here:

"U. Persons Insured

Each of the following is an insured under this insurance to the extent set forth below: Under the garage bodily injury and property damage liability coverages:

(1) * * *

(2) * * *

(3) With respect to the automobile hazard:

    (a) Any partner, or paid employee or director or stockholder or a member of the household of the named insured or such partner or paid employee or director or stockholder while using an automobile covered by this policy or when legally responsible for the use thereof, provided the actual use of the automobile is by the named insured or with her permission and

    (b) Any other person or organization legally responsible for the use thereof only while such automobile is physically operated by the named insured or any such partner or paid employee or director or stockholder or member of the household of the named insured or partner or paid employee or director or stockholder, provided the actual use of the automobile is by the named insured or with his permission."

    (Then follows a list of exclusions which are not applicable to Curtis.)

■■ Appellant first contends that since Curtis' use of the automobile was for the monetary benefit of Regency, he occupied a position equivalent to that of an employee of Regency, citing *Lowry v. Kneeland* (1962), 263 Minn. 537, 117 N.W.2d 207. In *Lowry*, one Boyer, the owner of a garage, asked a friend of his, Kneeland, to take him to the airport in the company car. On the way back, Kneeland was involved in an accident. On these facts, the Minnesota held that Kneeland was an employee of Boyer's corporation, and, hence, a person insured under the policy. That is not the case which confronts us. Even if it could be reasonably proved that Curtis was an employee of Regency, still he is not a "paid employee" as required by the policy, (paragraph U3a).

■■ Appellant also argues that an ambiguity is created, in that subsection (b) extends coverage to "any person * * * legally responsible for the use" of the vehicle with the permission of the named insured but limits this class by providing that the automobile must be physically operated by a limited class of which Curtis is not a member. We find no ambiguity here. Two conditions must be met in order to be an insured under this subsection: (1) use of the automobile with the permission of the named insured; and (2) physical operation by the named insured,

or any "partner or paid employee or director or stockholder". Curtis meets the first requirement, but does not meet the second.

■■ Appellant also suggests that since Curtis is not specifically excluded by the exclusions at the end of the "Persons Insured" provisions, he must therefore be included. Yet, as he is not specifically included, there was no need for him to be specifically excluded.

■■ Finally, appellant contends that since Curtis was included under the hazards provisions of the policy and was excluded under the persons insured provisions this creates an ambiguity in the policy which should be resolved against the insurer. (*Mosby v. Mutual Life Ins. Co.* (1950), 405 Ill. 599, 92 N.E.2d 103; *State Farm Fire and Casualty Co. v. MacDonald* (1967), 87 Ill.App.2d 15, 230 N.E.2d 513.) Nevertheless, this rule does not permit a court to invent an ambiguity where none in fact exists. (*Miller v. Madison Co. Mutual Automobile Ins. Co.* (1964), 46 Ill.App.2d 413, 197 N.E.2d 153.) Professor Hartwick's article, *supra*, states that "If *both* the person and the event are covered", not just one or the other. And, when faced with a similar argument, the court in *Inter-Insurance Exchange of the Chicago Motor Club v. Travelers Indemnity Co.* (1965), 57 Ill.App.2d 17 at 30, 206 N.E.2d 518, at 524 stated:

"But this clause [the hazards clause] while defining the scope of the coverage cannot be construed to increase the number of persons insured or protected under the policy. On the contrary it is only the "Definition of Insured" section of the policy which specifically designates who is to be insured ＊ ＊ ＊."

■■ The appellant asks us to reexamine the Illinois Supreme Court's holding in *McCann v. Continental Casualty Co.* (1956), 8 Ill.2d 476, 134 N.E.2d 302, that the omnibus provision does not become effective until such time as the policy is filed as proof of financial responsibility. Appellant argues that Curtis was insured since the policy contained a clause which provided that the policy should conform to state law and since the Financial Responsibility Act provides that any policy within its reach "shall insure ＊ ＊ ＊ any ＊ ＊ ＊ person using or responsible for the use of" the vehicle insured by the policy as long as such person is driving the car "with the express or implied permission of the insured". (Ill. Rev. Stat., ch. 95½, § 7-317(b)a.) Yet the provisions of the Financial Responsibility Act are "intended to be applicable to a *policy given to comply with the compulsory requirement of the F.R.A.*" and comes into play only when the policy is posted to ensure *future* financial responsibility. *Stollery Bros. v. Inter-Insurance Exchange* (1957), 15 Ill.App.2d 179, 182, 145 N.E.2d 768.

However, even if Curtis was not covered under the basic policy, Manchester argues, in the alternative that the endorsement attached to the

policy extended coverage to Curtis. The significant portions of the endorsement are reproduced here:

---

## "Customer Rental

This endorsement modifies such insurance as is afforded by the provisions of the policy relating to the following:

---

## "GARAGE INSURANCE

\* \* \*

It is agreed that the insurance under the bodily injury liability, property damage liability and automobile medical payments coverages applies with respect to any automobile rented by the named insured to a customer of the named insured while such customer's automobile is temporarily left with the named insured for service, repair or sale. The premium for this insurance shall not be subject to adjustment upon cancellation by the named insured."

■■ Of course, if there is a conflict in meaning between an endorsement and the body of the policy, the endorsement controls, (7 Am.Jur.2d, Automobile Insurance § 2), and therefore if the endorsement modifies the whole insurance policy, then Curtis would be covered.

Manchester argues that since the endorsement "modifies such *insurance*" it necessarily modifies the entire policy including, *inter alia,* the "persons insured" provisions. Manchester argues that, at least, an ambiguity exists which should be construed strictly against the insurer.

Appellees contend there is no reason why the general language of the heading should be given the effect of cancelling the clear intent of the specific language of the endorsement's body: that the language there clearly expands coverage to a *situation* where an automobile is "rented by the named insured to a customer of the named insured while such customer's automobile is temporarily left with the named insured for service", not to any *person*. And that the endorsement employes hazards terminology, *e.g.,* bodily injury liability, property damage liability, and medical payments liability. And finally, the endorsement is apparently intended to limit the impact of exclusion e(2)ii which states that the insurance does not cover "any automobile \* \* \* while rented to others by the named insured unless to a salesman for use principally in the business of the named insured \* \* \*". The contention is that the "Customer Rental" endorsement applies only to the insuring agreement and hazards, and not to the persons insured under the original policy.

■ ■■ We do not agree with appellees' contentions. We agree that, at the least, the "Customer Rental" endorsement created an ambiguity which

must be strictly construed again Universal. They drafted, and collected a substantial premium for the customer rental clause which on its face "modifies such insurance". Their ability to use the English language to take away that which they purport to give is amply displayed by page after page of fine print of exclusions, definitions, conditions, additional definitions, additional conditions and limits of liability. We have no doubt that Universal had sufficient vocabulary to specifically exclude, by definition, condition, exclusion, or limit of liability such *persons* as Curtis, by specific language in the customer rental endorsement. We cannot say that Regency, had they even attempted to interpret the endorsement in the light of the policy, could have determined that such *persons* as Curtis were excluded; and we doubt that they could have reached that result had the Hartwick article been furnished.

Universal has admitted the facts as stated in the First Amendment Complaint, and final declaratory judgment finding Curtis was covered by the Universal policy should be entered, and this cause is reversed and remanded for entry of judgment consistent herewith.

Reversed and remanded.

G. MORAN, P. J., and CREBS, J., concur.

### SUPPLEMENTAL OPINION UPON DENIAL OF PETITION FOR REHEARING

Mr. JUSTICE EBERSPACHER delivered the opinion of the court:

We have denied the Petition for Rehearing in this cause in which the holding of a Michigan Court has been brought to our attention. There it was held that a customer rental endorsement in substantially the same language as in this case did not serve to enlarge personal coverage to a customer driver. (*Gulach v. Jerry Davidson Buick, Inc.* (1968), 10 Mich.App. 238, 159 N.W.2d 168.) The Michigan Court saw fit to apply a strict technical-legal interpretation, and whether they were presented or considered the question of an ambiguity being created is not disclosed from their opinion.

In our consideration of the matter, although the Michigan case was not cited to us, we realized that by applying a strict technical interpretation, we could ignore what the endorsement purported to do but did not do because of the manipulation of words, and excuse Universal from coverage in the case. In its policy Universal displayed, by numerous pages of fine print, its ability to be specific with reference to exclusions, definitions, conditions and limits of liability. It, however, did not choose in its endorsement to be so specific about the exclusion of rental customers; this, in an endorsement which when read separately purported to

cover exactly the customer-rental situation which was alleged in the First Amended Complaint, and admitted for the purpose of the motion by Universal. In fact the endorsement was titled "Customer Rental".

■■■ A contract of insurance, like any other contract is arrived at as a result of the meeting of the minds of the insurer and the insured, and since the insurers draft the policies and endorsements and have experts to do so, and the insureds take what they get, or purport to get, at a cost which for all practical matters is not negotiated but imposed by insurers upon them, with only the choice of being insured or not insured, if any possible ambiguity exists, it must be construed against the insurer. We are not willing to charge the inexpert lay persons such as Regency with the responsibility of making or procuring independent technical legal opinions regarding what coverage they are buying, and believe they and the public whom they desire to protect are entitled to rely on language which purports to cover. We do not condone the practice of purporting to cover, that which by technical interpretation is not covered, by one who displays its expertise in dealing with a non-expert in routine business affairs.

Universal has again called to our attention that Regency is not complaining here about Universal's interpretation. We find this unpersuasive in view of the fact that the interests of Regency would now be best served by it, and any other interpretation would serve to make its loss record less desirable and thus result in increased premiums. They would hardly be expected to contend against their best financial interest, and from this record have obviously placed protection of their interest in the hands of their insurer, Universal. They, of course, had no choice but to be a defendant in these proceedings, and are compelled to cooperate with their insurer, if they seek protection.

G. MORAN and CREBS, JJ., concur.