467 A.2d 18

Arthur R. STOUT, Carole Stout, Arthur R. Stout, husband of Carole Stout, Gail Stout, a minor, by Arthur R. Stout, her guardian, Robert Stout, a minor, by Arthur R. Stout and Carole Stout, his wife, parents of Gail Stout and Robert Stout, Appellants,

v.

UNIVERSAL UNDERWRITERS INSURANCE COMPANY, a stock insurance company.

Superior Court of Pennsylvania.

Argued March 17, 1981.

Filed Oct. 14, 1983.

Petition for Allowance of Appeal Denied May 21, 1984.

---

242

George A. Conti, Jr., Greensburg, for appellants.

Donald W. Bebenek, Pittsburgh, for appellee.

Before PRICE, BROSKY and MONTEMURO, JJ.*

BROSKY, Judge:

The primary issue before us in this appeal is whether certain provisions of the Motor Vehicle Safety Responsibili-

* Price, J. did not participate in the consideration or decision of this case.

ty law,[1] (hereinafter, financial responsibility law) in effect at the time the instant suit was commenced, applied to all policies of insurance issued in the Commonwealth. We have concluded that the Act governed only those policies submitted to the Secretary of Revenue as proof of financial responsibility and that its provisions are therefore not applicable to this case. For the reasons that follow, we affirm.

Appellants commenced this action to recover damages for injuries they suffered when the automobile in which they were traveling was struck by a vehicle driven by Clyde James Jones. The automobile operated by Mr. Jones was owned by Hamilton Buick & Pontiac, Inc., which company had loaned the car to Mr. Jones while his mother's automobile was being repaired.

In suits against Mr. Jones, appellants recovered judgments totaling $98,132.60, none of which had been paid when the present suit was initiated.[2]

It is appellants' contention that Universal Underwriters Insurance Company, which had issued a "garage" policy to Hamilton Buick is liable to them under the terms of a rental endorsement to that policy or, in the alternative, under the terms of Pennsylvania's financial responsibility law.

The parties stipulated to the following facts below:
There was no contract between Jones and Hamilton relating to use of the Buick automobile. There was no monetary charge imposed against Jones by Hamilton for use of the Buick automobile. There were no representations to Jones by Hamilton relating to insurance protection.

[In the suits between the Stouts and Jones], Universal Underwriters did not extend coverage to Jones or defend [him].

1. Act of June 1, 1945, P.L. 1340, *as amended;* 75 P.S. § 1277.1 *et seq.,* repealed April 29, 1959, P.L. 58, No. 32, art. XV, § 1501.

2. Voluntary nonsuits were entered in favor of Hamilton in those actions.

The policy issued to Hamilton by Universal defines "automobile hazard" as one of the following hazards for which insurance is afforded as indicated in the schedule. Among the hazards listed as covered is: "the ownership, maintenance or use of any automobile owned by the named insured while furnished for the use of any person."

With respect to the automobile hazard, the named insureds are defined as:

(a) any partner, or paid employee or director or stockholder thereof or a member of the household of the named insured or such partner or paid employee or director or stockholder while using an automobile covered by this policy or when legally responsible for the use thereof, provided the actual use of the automobile is by the named insured or with his permission, and

(b) any other person or organization legally responsible for the use thereof only while such automobile is physically operated by the named insured or any such partner or paid employee or director or stockholder, or member of the household of the named insured or partner or paid employee or director or stockholder, provided the actual use of the automobile is by the named insured or with his permission.

Appellants do not contend that they fall under the definition of insured parties. Instead, they argue that coverage should be extended to them by virtue of Pennsylvania's financial responsibility law.

In 1970, when this accident occurred, the Motor Vehicle Safety Responsibility Act imposed sanctions on persons who had been involved in automobile accidents and had not provided recompense for the damages they caused. The purpose of the Act was explained by our Supreme Court in *Parks v. Parks*, 390 Pa. 287, 298, 135 A.2d 65, 72 (1957) in the following manner:

This statute does not require compulsory insurance on the part of the operator or owner of a motor vehicle; *it is*

*a legislative attempt to provide financial responsibility after an accident has happened* so that the person injured may secure from a wrongdoer redress for his injuries. (Emphasis added.)

See also *Nationwide Mutual Insurance Company,* 290 Pa.Super. 129, 434 A.2d 164 (1981); *Commonwealth v. Kowell,* 209 Pa.Super. 386, 228 A.2d 50 (1967).

The Act required those who had been involved in accidents to show proof of their financial responsibility. One way in which that could be done was by filing with the Secretary of Revenue a certificate showing that the person involved was covered by a motor vehicle liability policy. (75 P.S. § 1277.5). The Act defined "motor vehicle liability policy," "as said term is used in *this article,*" as one which *inter alia,* "Shall insure the person named therein and any other person as insured using any such motor vehicle or motor vehicles, with the express or implied permission of such named, ..."

Appellants urge us to hold that the permissive language required to be included in policies submitted as proof of financial responsibility be deemed a part of the policy covering Hamilton. Yet the evidence adduced at trial indicates clearly that the policy had never been submitted as proof of financial responsibility.

Among the conditions stated by the policy is:

Financial Responsibility Laws: *When this policy is certified as proof of financial responsibility for the future* under the provisions of any motor vehicle financial responsibility law, such insurance as is afforded by this policy for bodily injury liability or for property damage liability shall comply with the provisions of such law to the extent of the coverage and limits of liability required by such law.

It is well established that an insurance policy must be read in its entirety and its words must be given their

plain and proper meanings. *Monti v. Rockwood Insurance Co.,* 303 Pa.Super. 473, 476, 450 A.2d 24, 25 (1982). Furthermore, a court should not rewrite terms of a policy or give them a construction in conflict with the accepted and plain meaning of language used in the policy. *Monti, Id.,* 303 Pa.Superior Ct. at 476–477, 450 A.2d at 26.

■ We believe the language of Universal's policy clearly indicates that the parties intended the provisions of the financial responsibility law to come into play only if and when the policy were offered as proof of financial responsibility. Such a construction is entirely consistent with the terms of the law itself which defines a motor vehicle liability policy as one offered as proof of financial responsibility.

This issue is one of first impression in Pennsylvania, but in reaching our decision we were guided by the opinions of courts in other jurisdictions which were confronted with the same issue.

In *Manchester Insurance and Indemnity Company v. Universal Underwriters Insurance Company,* 5 Ill.App.3d 847, 285 N.E.2d 185 (1972), the Illinois Appellate Court analyzed a policy the relevant terms of which were identical to those before us. The court was urged to apply the permissive language of that state's financial responsibility law to the policy, but declined to do so holding that the Act's provisions "come into play only when the policy is posted to ensure *future* financial responsibility." Id. at 852, 285 N.E.2d at 189 (emphasis in original). See also *Moyer v. Aron,* 175 Ohio St. 490, 196 N.E.2d 454 (1964) (looking to the definition of "policy" in the financial responsibility law); *Universal Underwriters Insurance Company v. State Farm Mutual Automobile Insurance Company,* 166 Mont. 128, 531 P.2d 668 (1975); *Farmers Alliance Mutual Insurance Co. v. Bakke,* 619 F.2d 885 (1980) (10th Cir.1980); *Christensen v. State Farm Mutual Automobile Insurance Company,* 52 Haw. 80, 470 P.2d 521 (1970).

We turn next to appellants' argument that a rental endorsement attached to the Universal policy provided them with coverage.

The "garage liability" portion of the policy states that The company will pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of ... bodily injury ... to which this insurance applies, caused by an occurrence and arising out of garage operations, including only the automobile hazard for which insurance is afforded as indicated in the schedule ...

Excluded from the garage liability section is bodily injury "... arising out of the ownership, maintenance, operation, use, loading or unloading of any ... automobile ... while rented to others by the named insured unless to a salesman for use principally in the business of the named insured."

An endorsement added to the body of the policy entitled "Customer Rental" provides:

This endorsement modifies such insurance as is afforded by the provisions of the policy relating to the following:

## GARAGE INSURANCE

It is agreed that the insurance under the *bodily injury* liability, *property damage* liability and automobile medical payments coverages applies with respect to any *automobile* rented by the *named insured* to a customer of the *named insured* while such customer's *automobile* is temporarily left with the *named insured* for service, repair or sale. The premium for this insurance shall not be subject to adjustment upon cancellation by the *named insured.* (Emphasis in original.)

■ Appellants contend that coverage was extended to Mr. Jones by this endorsement. We do not agree.

The garage liability section stated at the outset that it provided coverage for sums which the *insured* is liable. The driver, Mr. Jones, was clearly not a named insured. Nor did the policy contain a clause naming him as an insured in the instance he was driving the auto with the

permission of the owner. Compare: *Esmond v. Liscio*, 209 Pa.Super. 200, 224 A.2d 793 (1966).

Instead, the endorsement modified the garage liability policy to the extent of covering the *hazard* in which the automobile is rented to one whose vehicle is being repaired.

■ While ambiguous terms in an insurance policy are to be construed against the insurer, see e.g. *Burne v. Franklin Life Insurance Co.*, 451 Pa. 218, 301 A.2d 799 (1973), we do not find the terms of Universal's policy ambiguous as to the effect of the endorsement.

■ While we express no opinion as to whether the loaned vehicle was or was not a "rented" one (see *Gulash v. Jerry Davidson Buick, Inc.*, 10 Mich.App. 238, 159 N.W.2d 168 (1968)), we conclude that even if it is viewed as having been rented, Universal had not contracted to provide liability insurance to the non-owner driver. See *Gulash*, supra, *State Farm Insurance Company v. Universal Underwriters Insurance Company*, 68 Ill.App.3d 281, 24 Ill.Dec. 935, 386 N.E.2d 139 (1979), but see *Manchester Insurance*, supra; *Hardware Mutual Casualty Company v. Farmers Insurance Exchange*, 256 Or. 599, 474 P.2d 316 (1970).

We are aware that the courts of other jurisdictions have resolved the issue before us differently. Our decision is based on our reading of the policy at issue in this case. The definition of insured persons is not affected by the customer rental endorsement. It purports only to modify the garage liability portion of the policy which itself limits the liability of the company to that of paying sums owed by the insured. The garage liability section is modified to add a hazard for which the insured may seek recompense; it does not add to the list of insured persons who are entitled to coverage.

For these reasons, we affirm the order of the lower court.

MONTEMURO, J., concurs in the result.