Fifth Division

June 28, 2002

No. 1-01-2810

MICHAEL HARRINGTON, ) 

) Appeal from the

Plaintiff-Appellee, ) Circuit Court of 

) Cook County, Illinois.

)

) No. 97 CH 12150

AMERICAN FAMILY MUTUAL INSURANCE )

COMPANY, an Illinois Corporation, and ) The Honorable

ANTHONY STAJSZCZAK, ) Julia M. Nowicki

) Judge Presiding.

Defendants-Appellants. )

JUSTICE GREIMAN delivered the opinion of the court:

Plaintiff, doing business as Green Acres Landscaping, purchased an insurance policy from American Family Mutual Insurance Company (American) that consisted of commercial general liability coverage and commercial inland marine coverage in the amount of $1 million.  The commercial general liability policy included an endorsement that provided coverage for hired auto and nonowned auto liability.  In addition to the commercial general liability policy, plaintiff purchased a 
separate
 group automobile liability policy in order to provide coverage for the vehicles being operated in connection with his business.  Pursuant to the terms of this policy, bodily injury liability was limited in the amount of $100,00 per person and $300,000 per occurrence; accordingly, plaintiff contracted for uninsured motorist coverage in the amounts of $100,000 per person and $300,000 per occurrence.  

Plaintiff alleges that on June 17, 1994, he was struck by an automobile while riding a bicycle.  Ultimately, plaintiff settled with the driver's insurer, Farmer's Insurance Company, for the full available policy limits of $100,000.  Plaintiff then submitted a claim to American for uninsured motorist coverage based on a belief that his damages exceeded $100,000.  American denied plaintiff's claim on the basis that the amount paid by Farmer's Insurance Company equaled the uninsured motorist coverage available to plaintiff under the separate group automobile liability policy.

On September 29, 1997, plaintiff filed a complaint for declaratory judgment against American wherein he alleged that the commercial general liability policy was subject to section 143a-2 of the Illinois Insurance Code and that, by operation of law, he was entitled to uninsured motorist coverage in the amount of that policy. 215 ILCS 5/143a-2 (West 1992).  Based on that allegation, plaintiff requested that defendant be ordered to arbitrate the matter as if uninsured motorist coverage in the amount of $1 million was included in the commercial general liability policy and that the court find that defendant had engaged in improper claims practices.  

American filed an answer to plaintiff's complaint in which all of plaintiff's relevant allegations were denied.  Shortly thereafter, plaintiff filed a motion for judgment on the pleadings asserting that American was required by section 143a-2 to offer him uninsured motorist coverage in connection with his purchase of the commercial general liability policy because that policy included an endorsement for hired auto and nonowned auto liability.  Plaintiff's motion for judgment on the pleadings was stricken because plaintiff had not complied with defendant's outstanding discovery requests.  

On June 29, 1999, plaintiff filed a first amended complaint for declaratory judgment.  In counts I and II of that pleading, plaintiff realleged the same relevant facts contained in the original complaint and requested that the trial court reform the commercial general liability policy so that it included uninsured motorist coverage in the amount of $1 million and order American to arbitrate the matter.  Furthermore, in count III, plaintiff asserted that American, through its agent Anthony Stajszczak, breached a duty of care it owed to him by negligently advising him with respect to his insurance needs and by failing to provide him with adequate insurance.  In count IV, plaintiff argued that defendant's conduct with respect to the sale of the commercial general liability policy was in violation of the Consumer Fraud and Deceptive Business Practices Act. (815 ILCS 505/1, 
et seq.
 (West 1992)).  

American answered counts I and II of the first amended complaint for declaratory judgment and filed a motion to dismiss counts III and IV.  The trial court granted the motion to dismiss as to count IV, but denied the motion as to count III.  

On September 27, 1999, plaintiff filed a second amended complaint for declaratory judgment which included an amended count IV.  Additionally, in the second amended complaint, plaintiff joined Anthony Stajszczak as a defendant with respect to counts III and IV.  Defendants filed a motion to dismiss count IV and answered the remaining counts.  The trial court denied the motion to dismiss count IV and, shortly thereafter, defendants filed an answer to it.  

On May 26, 2000, plaintiff filed a motion for judgment on the pleadings as to counts I and II of the second amended complaint.  Specifically, plaintiff reiterated his argument that the inclusion of the endorsement in the general liability policy brought the policy within the scope of section 143a-2 and required that an offer of uninsured motorist coverage be made at the time plaintiff purchased the policy.  

On September 6, 2000, American filed its response and cross-motion for judgment on the pleadings as to counts I and II.  American asserted that it was entitled to entry of the judgment in its favor on plaintiff's request to reform the policy to include uninsured motorist coverage insomuch as the subject commercial general liability policy provided coverage only for the liability of the plaintiff for injuries sustained by third parties in connection with his business and not for injuries sustained by plaintiff himself.  In simpler terms, American argued that a "liability only" policy cannot be held subject to the requirements of section 143a-2.  

On October 12, 2000, the trial court ruled that the commercial liability policy was a "liability" policy as opposed to a "vehicle" policy and that the endorsement was also limited solely to liability.  Accordingly, the trial court entered an order granting American's cross-motion for judgment on the pleadings, denying plaintiff's motion for judgment on the pleadings, and entering judgment in favor of American and against the plaintiff on counts I and II.

Plaintiff filed a motion to reconsider, which was granted by the trial court.  The trial court entered an order granting plaintiff's motion to reconsider, vacating the order of October 12, 2000, and granting judgment in favor of plaintiff on counts I and II of the second amended complaint for declaratory judgment.

Next, American filed a motion to reconsider the trial court's order of March 6, 2001, which was subsequently denied by the trial court.  American now appeals the trial court's ruling on counts I and II of the second amended complaint.  

The issue before us is whether the trial court correctly determined that the commercial general liability policy issued to plaintiff was subject to section 143a-2 of the Illinois Insurance Code.  We affirm the trial court's decision to enter judgment in favor of the plaintiff on counts I and II of the second amended complaint.

On appeal, American asserts that the commercial general liability policy issued to plaintiff does not fall within the ambit of section 143a-2, and, therefore, it was never required to offer plaintiff uninsured motorist coverage.  Plaintiff, on the other hand, argues that section 143a-2 mandates reformation of the commercial general liability policy to provide uninsured motorist coverage, and, therefore, the trial court's decision should be affirmed.  Since the case at bar stems from the trial court's judgment on the pleadings, the standard of review is 
de novo
. 
Board of Trustees of the University of Illinois v. City of Chicago
, 317 Ill. App. 3d 569, 571 (2000). 

First, we consider the nature of the insurance coverage purchased by plaintiff.  In the case at bar, plaintiff purchased a commercial general liability policy for the period from November 2, 1993, to November 2, 1994, naming as the insured Michael Harrington, doing business as Green Acres Landscaping, operated as a sole proprietorship.  Attached to the policy is an endorsement titled "Hired Auto and Non-Owned Auto Liability."  "When a court interprets an insurance policy, there are only two sources upon which it may base its analysis: the plain language of the policy and the plain language of the Insurance Code of 1937 as it existed at the time the policy was written. 
Cincinnati Insurance Company v. Miller
, 190 Ill. App. 3d 240, 244 (1989), citing 
Bailey v. State Farm Fire & Casualty Co.
, 156 Ill. App. 3d 979, 984 (1987).  Only where an ambiguity exists should the court look to other materials. 
Cincinnati
, 190 Ill. App. 3d at 244, citing 
Price v. State Farm Mutual Automobile Insurance Co.
, 116 Ill. App. 3d 463, 470 (1983).  

Mindful of the aforementioned rules of law, we will examine the plain language of the policy, as amended with the endorsement, and section 143a-2 of the Insurance Code in an effort to determine whether American had a duty to offer uninsured motorist coverage to plaintiff in connection with his purchase of the commercial general liability policy.  Moreover, case law tells us that in order to determine whether the commercial general liability policy at hand falls within the scope of section 143a-2, we must first determine whether the direct benefit, albeit the financial benefit of the policy at hand, is received by the insured, the plaintiff in the case at bar, or by the individual who is physically injured himself. 

In 
Cincinnati
, 190 Ill. App. 3d at 245, this court relied on insurance classifications set forth in the Insurance Code to reach the conclusion that "[l]iability insurance protects the insured from financial losses for claims brought by other persons which are legally recoverable against the insured."  Uninsured motorist coverage, on the other hand, constitutes coverage where, regardless of the insured's liability, the insured is protected from financial losses for his or her injury caused by and legally recoverable from another person who owns and/or operates an uninsured or underinsured motor vehicle. 
Cincinnati
, 190 Ill. App. 3d at 245.  If an insurance policy contains no express uninsured or uninsured coverage provision, the insured cannot recover on his own liability policy. 
Cincinnati
, 190 Ill. App. 3d at 247.

In 
Cincinnati
, 190 Ill. App. 3d at 246, the issue was whether the insurance company had a duty to offer uninsured motorist coverage in connection with an umbrella policy.   
Cincinnati
 was decided in 1989 and, at that time, the Illinois Insurance Code provided in pertinent part:

" 'Insurers providing personal liability coverage on an 

excess or umbrella basis are neither required to offer, 

nor are they prohibited from offering or making available

coverages conforming to this Section on a supplemental 

basis.' " 
Cincinnati
,190 Ill. App. 3d at 246, quoting 

Ill. Rev. Stat. 1983, ch. 73, par. 755a-2(6).

Since 1989, section 143a of the Insurance Code has been rewritten and no longer includes this provision.  At the time this provision was in effect, however, the 
Cincinnati
 court held that, in light of the statutory language, the insurance company was under no duty to offer the plaintiff uninsured motorist coverage in conjunction with her umbrella policy.  In addition to citing to the aforementioned provision for support, the 
Cincinnati
 court cited to 
Hartbarger v. Country Mutual Insurance Co.
, 107 Ill. App. 3d 391 (1982).  

The 
Cincinnati
 court noted that in 
Hartbarger
, this court stated that " '[a]n umbrella liability policy is generally designed to protect the insured from a judgment against him in an amount greater than that provided for in the underlying policies.' " 
Cincinnati
, 190 Ill. App. 3d at 247, quoting 
Hartbarger
, 107 Ill. App. 3d at 394.  In addition, the 
Cincinnati
 court stated:

"The 
Hartbarger
 court found that umbrella policy

coverage is entirely different from coverage under 

an automobile policy and found that both insured 

and insurer intended that this umbrella policy was 

to protect the insured against excess judgments in 

favor of others." 
Cincinnati
, 190 Ill. App. 3d at 247,

citing 
Hartbarger
, 107 Ill. App. 3d at 396.  

The 
Hartbarger
 court reasoned that, ultimately, the monetary benefit of an umbrella policy falls upon the injured individual, not the insured.  We note that where uninsured motorist coverage is involved, the monetary benefit ultimately falls upon the insured.  Thus, these two, separate types of policies "protect" different classes of "recipients."  Aware of this observation, the 
Hartbarger
 court refused to rewrite provisions of the umbrella policy simply to expand the coverage to include uninsured motorist coverage, which serves to benefit the insured. 
Cincinnati
, 190 Ill. App. 3d at 247, citing 
Hartbarger
, 107 Ill. App. 3d at 396.  

Section 143a-2(4) of the Illinois Insurance Code requires that on or after July 1, 1983, the insurer offer additional uninsured motorist coverage in connection with every motor vehicle policy. 215 ILCS 5/143a-2(4) (West 1992).  Thus, we must ask whether the commercial general liability policy at issue in the case at bar constitutes a motor vehicle policy or, perhaps, a policy more similar to that of an umbrella policy.

The commercial general liability policy at bar is unambiguous.  Section I (coverage A) of the policy clearly provides plaintiff with liability coverage for bodily injury and property damage.  However, attached to the policy is an endorsement.  This court has held that "if there is a conflict in meaning between an endorsement and the body of the policy, the endorsement controls." 
Manchester Insurance and Indemnity Co. v. Universal Underwriters Insurance Co.
, 5 Ill. App. 3d 847, 853 (1972).  Moreover, the endorsement clearly states that it changes the policy and, more specifically, modifies the commercial general liability coverage portion.   The endorsement at issue provides liability coverage for bodily injury or property damage arising out of the maintenance or use of a "hired auto" by plaintiff or plaintiff's employees in the course of business.  Additionally, the endorsement provides coverage for bodily injury or property damage arising out of the use of any "non-owned auto" by any of plaintiff's employees.  We find that, in effect, the endorsement transforms the commercial general liability policy into a motor vehicle policy for purposes of section 143a-2 of the Insurance Code.  Thus, we hold that pursuant to section 143a-2, American's agent, Anthony Stajszaczak, had a duty to offer plaintiff uninsured motorist coverage.  In light of our finding that the endorsement at issue forces the commercial general liability policy into the realm of motor vehicle policies, we hold that this court's decision in 
Cincinnati
 is inapplicable since it dealt with an umbrella policy.      

American contends that we cannot reach such a holding because doing so is inconsistent with the language set forth in section 143a-2(1) of the Insurance Code.  Section 143a-2(1) provides in pertinent part:

"Additional uninsured motor vehicle coverage.  No 

policy insuring against loss resulting from liability

imposed by law for bodily injury or death suffered

by any person arising out of the ownership, 

maintenance or use of a motor vehicle shall be 

renewed or delivered or issued for delivery in this

State with respect to any motor vehicle designed

for use on public highways and required to be 

registered in this State unless uninsured motorist

coverage as required in Section 143a of this Code

is included in an amount equal to the insured's

bodily injury liability limits unless specifically rejected 

by the insured." 215 ILCS 5/143a-2(1) (West 1992).  

According to American's interpretation of section 143a-2(1), this provision requires that uninsured motorist coverage only be offered in conjunction with policies insuring against "loss" suffered by the 
insured
.  American asserts that this provision does not apply to policies insuring against either 
loss or liability
.  In essence, American is arguing that the uninsured motorist coverage provision only applies to policies where the 
only 
injury insured is the insured's potential injury.  In the case at bar, the endorsement provides coverage for bodily injury and property damage inflicted by the plaintiff, the insured, on another party; therefore, defendant contends that section 143a-2(1) does not apply to the policy at bar.  Furthermore, like an umbrella policy, American asserts that the policy at bar, which it interprets as a "liability only" policy, is aimed at protecting the injured third-party, rather than the insured.  Thus, just as the 
Cincinnati
 court refused to require that uninsured motorist coverage be offered in conjunction with an umbrella policy, American asks that this court find that uninsured motorist coverage need not be offered in conjunction with a policy designed to protect the insured only against liability to others.

We cannot agree with American's argument.  To begin, this court has held that " 'every liability insurance policy issued for any motor vehicle registered or principally garaged in Illinois must provide coverage for bodily injury or death caused by an uninsured or hit-and-run vehicle.' " 
Norris v. National Union Fire Ins. Co. of Pittsburgh, PA
, 326 Ill. App. 3d 314, 321 (2001), quoting 
Luechtefeld v. Allstate Insurance Co.
, 167 Ill. 2d 148, 152 (1995).  American itself states that the policy at bar, including the endorsement, constitutes a liability policy; therefore, we find no reason why the 
Norris
 holding is not applicable to the case at bar.  Furthermore, we note that American neither cites to 
Norris
 in its briefs nor offers any case law refuting 
Norris
.

Additionally, a review of section 143a-2(1) shows that the statutory language clearly requires that uninsured motorist coverage be offered in connection with any motor vehicle policy "insuring against loss resulting from liability imposed by law for bodily injury or death suffered by any person arising out of the ownership, maintenance or use of a motor vehicles." 215 ILCS 5/143a-2(1) (West 1992).  The key words in this provision are "any person." See also 215 ILCS 143a(4) (West 1992).  This provision does not discriminate between the insured and the injured third party.  Section 143a-2(1) applies to any policy insuring against loss, whether it be the insured's loss or the third party's loss, resulting from liability imposed by law.  While American offers a very creative argument, we find it implausible that the legislature intended that the option to purchase uninsured motor coverage only apply to a narrow class of motor vehicle policies.

In sum, the endorsement sold to plaintiff provided auto liability coverage, and, therefore, American was required to offer plaintiff uninsured and underinsured motorist coverage in an amount equal to the insured's bodily injury liability limits. 
Holland v. State Farm Mutual Automobile Insurance Co.
, 216 Ill. App. 3d 463, 465 (1991); 215 ILCS 5/143a-2(1) (West 1992).  It is undisputed that American failed to take any steps to offer plaintiff uninsured motorist coverage as required by statute.  Therefore, statutory law and case law require that the commercial general liability policy at issue be reformed to contain uninsured motorist coverage.  

For the foregoing reasons, we hold that the trial court properly granted judgment in favor of the plaintiff on counts I and II of the second amended complaint.   Consequently, we affirm the trial court's order of March 6, 2001, granting plaintiff's motion to reconsider, and the trial court's order of June 20, 2001, denying American's motion to reconsider.

Affirmed.

CAMPBELL, P.J., concurs

QUINN, J., dissents.

JUSTICE QUINN dissenting.

I respectfully dissent.  I do not agree that the endorsement at issue modified the commercial  general liability policy in such a manner that Section 143a-2 requires it to be reformed to contain uninsured motorist coverage.

The endorsement is titled "HIRED AUTO AND NON-OWNED AUTO LIABILITY."  In pertinent part, it provides "HIRED AUTO LIABILITY - The insurance provided under Coverage A (Section  1) applies to 'bodily injury' or 'property damage' arising out of the maintenance or use of a 'hired auto' by you or your employees in the course of your business."

"NON-OWNED AUTO LIABILITY - The insurance provided under Coverage A (Section 1) applies to 'bodily injury' or 'property damage' or 'property damage' arising out of the use of any 'non-owned auto' in your business by any person other than you."

****

" 'Hired auto' means any 'auto' you lease, hire or borrow."

****

" 'Non-owned auto' means any 'auto' you do not own, lease, hire or borrow which are used in connection with your business."

****

"All other terms, agreements, conditions, and provisions remain unchanged."

The policy itself provides:

"SECTION 1 - COVERAGES

****

COVERAGE C. MEDICAL PAYMENTS

****

2. 
Exclusions

We will not pay expenses for 'bodily injury':

a. To any insured."

The unambiguous language of the endorsement provides that the insurance provided under Coverage A (Section 1) only applies to bodily injury arising out of (1) the maintenance or use of an auto leased, hired or borrowed by Harrington or his employees in the course of Harrington's business; (2) the use of any "non-owned auto" used in Harrington's business by someone other than Harrington.

It is uncontroverted that Harrington's bodily injuries were suffered when he was riding on a bicycle.  Of course, a bicycle is neither a "hired auto" nor a "non-owned auto."  It is also uncontroverted that the vehicle which struck Harrington was not being used in Harrington's business.  Consequently, even if we were to reform the commercial general liability policy to include uninsured motorist coverage for those autos specified in the endorsement, Harrington could not recover.

I think it is also important to note that our supreme court has stated that Section 143a does not place "any restriction on the right of the parties to an insurance contract to agree on which persons are to be the 'insureds' under an automobile insurance policy."  
Heritage Insurance Co. of America v. Phelan
, 59 Ill. 2d 389, 395 (1974); followed by 
Cohs v. Western States Insurance Co.
, No. 1-00-2548, May 7, 2002, slip op. at 6. (2002 WL 884788).

As the bodily injury suffered by plaintiff did not arise out of the use of a "hired auto" or a "non-owned auto" in the course of Harrington's business, the trial court should have granted judgment in favor of the defendant on counts I and II of the second amended complaint.  Because of this, I believe that it is unnecessary for this court to decide the issue of whether Section 143a-2 applies to commercial general liability insurance policies which contain endorsements providing coverage for autos under certain conditions.  I think this case is an excellent example of why advisory opinions are to be avoided.  See 
Barth v. Reagan
, 139 Ill. 2d 399, 419 (1990).